THE STATE OF KANSAS v. GEORGE B. STEVENS.
**No. 13,786.** ( 75 Pac. 546.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Common Nuisance.* Section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463), prescribing punishment for the owner or keeper of a common nuisance, was repealed by section 1, chapter 232, Laws of 1901 (Gen. Stat. 1901, § 2493), prescribing punishment for the person engaged in maintaining or assisting in maintaining a common nuisance.

2. ———— *Information Sufficient.* On February 12, 1901, an information was filed against defendant, intended to charge him with being the owner or keeper of a common nuisance under section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463). On April 22, 1903, upon motion of the defendant, the information was quashed, as being indefinite in the crime charged and in the location of the place. The state was permitted to file an amended information under said section 4 of chapter 165. Defendant filed his motion to quash the amended information, and also filed a plea in abatement, averring, in substance, that said amended information was indefinite and charged no public offense; that it was a departure from the original information; that said section 4 of chapter 165 was repealed by said section 1 of chapter 232; that at the time said amended information was filed no legal proceeding had been commenced or was pending against him. *Held,* that there was no error in the overruling of the motion to quash said amended information or in sustaining the demurrer of the state to said plea in abatement; that the averments of the original information were sufficient; that a proceeding was commenced and pending, within the meaning of section 7342, General Statutes of 1901, and that under said section 7342 the right survived to the state, under the order of the trial court, to amend the original information and prosecute the defendant under the information, as amended, for a violation of section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463).

3. ———— *Jury and Jurors — Challenge for Cause.* In a prosecution for the violation of the prohibitory-liquor law, charging defendant with being the owner and keeper of a common nuisance, under section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463), *held,* that it was error for the court to overrule defendant's challenges to jurors for cause, over his exception, and permit such jurors to serve upon the trial, defendant having exhausted all his peremptory challenges in the impaneling of said jury; it having

been shown by the answers of the jurors that each, from having heard of a "joint smashing," entertained an opinion that "joints," or places where intoxicating liquors were kept, sold and drank as a beverage, in violation of said act, were at the time destroyed; it having also been shown by the answers of said jurors that if, upon the trial, it should appear that defendant was the owner or keeper of a place at the time so destroyed, said jurors entertained an opinion that it would establish defendant as the owner or keeper thereof.

Appeal from Harper district court; P. B. GILLETT, judge.  Opinion filed February 6, 1904.  Reversed.

*C. C. Coleman*, attorney-general, *R. H. Beebe*, and *E. C. Wilcox*, for The State.

*George E. McMahon, S. S. Sisson*, and *T. A. Noftzger*, for appellant.

The opinion of the court was delivered by

ATKINSON, J. :  On February 12, 1901, an information was filed against George B. Stevens in the district court of Harper county.  The intention of the prosecutor in said information was to charge appellant with being the owner and keeper of a common nuisance in the city of Anthony, Harper county, Kansas, under section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463).

Defendant filed his motion to quash the information, on the ground, first, that said information was vague, indefinite and uncertain as to the offenses charged; second, that several offenses were improperly joined and set forth in one count of the information.  This motion was heard and by the court sustained on April 22, 1903.  The county attorney was given leave, over the objection of defendant, to amend the information, and an amended information, charging the defendant in two counts with keeping and maintaining a com-

mon nuisance at each of the two places described in the original information, was filed on April 23, 1903. Defendant then filed his motion to quash the amended information on the ground, first, that it did not state facts sufficient to constitute a public offense; and second, that it was a departure from the original information. The motion to quash was overruled by the court, to which ruling the defendant excepted.

Defendant then filed a plea in abatement, alleging, in substance, that the amended information filed against him on April 23, 1903, was not an amendment of the original information filed against him on February 12, 1901, but was a total departure from it; that the only crime attempted to be charged in the supposed information was the crime of being the keeper of a common nuisance, as defined by section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463); that said law defining the crime with which he was sought to be charged in the original information was repealed by section 1, chapter 232, Laws of 1901 (Gen. Stat. 1901, § 2493).

Defendant in his plea in abatement further averred that at the time of the repealing of section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463), there was no sufficient information or proceeding pending against him charging him with the offense attempted to be charged in the amended information; that the original information filed against him failed to charge him with the offense or crime of being the owner or keeper of a common nuisance, as defined by the law in force at the time of filing the original information. To this plea in abatement a demurrer was filed, and sustained by the court, to which ruling the defendant excepted. A trial was had upon the amended information, and on September 19, 1903, defendant

was convicted on both counts of the amended information, and sentenced to imprisonment in the county jail for a period of thirty days and to pay a fine of $100 on each count.  Defendant appeals to this court, and assigns error in the rulings of the trial court in overruling his motion to quash the amended information and in sustaining the demurrer of the state to his plea in abatement.  A motion to dismiss the appeal is filed in this court, but we do not deem it available.

Chapter 232, Laws of 1901, took effect March 1, 1901.  Section 9 of that act repeals all acts and parts of acts inconsistent therewith and contains no saving clause as to pending prosecutions, or otherwise.  Section 4 of chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463), under which defendant was prosecuted and convicted, contains both a criminal and civil remedy for the suppression and abatement of common nuisances.  Section 1 of chapter 232, Laws of 1901 (Gen. Stat. 1901, § 2493), contains a criminal remedy only for the suppression and abatement of common nuisances. In section 4 of the act of 1887, it is the owner or keeper of such nuisance who is defined as being the offender.  In section 1 of the act of 1901 it is the person who maintains or assists in maintaining such common nuisance who is defined as being the offender.  The fine in each of said sections, upon conviction, is the same; but under the former, upon conviction, the maximum jail sentence is ninety days, while under the latter, upon conviction, the maximum jail sentence is six months.  Because of changes in the nature of the offense, and because of the change in the penalty prescribed, section 4, chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463), was repealed by section 1, chapter 232, Laws of 1901 (Gen. Stat.

1901, § 2493). (*The State v. Estep*, 66 Kan. 416, 71 Pac. 857.)

If, as contended by defendant, the original information was so defective as not to have charged him with an offense under section 4 of chapter 165, Laws of 1887 (Gen. Stat. 1901, § 2463), the trial court committed error in not sustaining defendant's motion to quash and in sustaining the demurrer of the state to the plea in abatement.

We have carefully examined the original information. It is inartistically drawn, and does not use the language of said section 4 in charging defendant with being the owner or keeper of such common nuisance, and is somewhat open to the charge of being indefinite. We are of the opinion, however, that the averments of this information are such that a proceeding was commenced, within the meaning of section 7342, General Statutes of 1901; that under said section the right survived to the state, under the order of the trial court, to amend the original information and prosecute defendant under the information as amended; that the amended information was not such a departure from the original information as to be fatal to it; that the court committed no error in refusing to sustain defendant's motion to quash the amended information, or in sustaining the demurrer of the state to the plea in abatement.

A more serious question arises, however, upon defendant's assignment of error to the ruling of the trial court in overruling his challenges for cause to jurors who sat and served at the trial. The record contains a statement that

"On the trial of said cause the evidence disclosed and proved that on the morning of the 30th day of January, in the year 1901, there occurred in the city of Anthony, in said county, what was known as a

'joint smashing,' and that a number of persons carrying hatchets, hammers, etc., did break into the building described in the first count of the amended information filed in this cause, and did break and destroy a large amount of property; and that a large percentage of the property so destroyed consisted of intoxicating liquors; that the property so destroyed in said building, including said intoxicating liquors, belonged to and was owned by the defendant.''

The following are questions propounded by defendant to the juror R. C. Haskins upon his *voir dire*— a juror who sat and served at the trial of said cause —and his answers thereto:

"Ques.  You heard along some time in the latter end of January or first of February of 1901 of what was known as the smashing of intoxicating liquors here in the city of Anthony?  Ans.  Yes, sir; I believe I did.

"Q.  Did you read about it at the time?  A.  Yes, sir.

"Q.  Read that Mr. Stevens had some property destroyed by a mob at that time?  A.  Yes, sir.

"Q.  Well, did that lead you to form the opinion that Mr. Stevens, who had his property destroyed, was probably engaged in the violation of the prohibitory law at that time?  A.  Yes, sir; I think it did.

"Q.  And you have that opinion at this time, don't you?  A.  Yes, sir.

"Q.  That Mr. Stevens, who had his property destroyed at that time, was engaged in the violation of the prohibitory-liquor law?  A.  Yes, sir.

"Q.  And probably the keeper or maintainer of what is known as a joint?  A.  Yes, sir.

"Q.  Are you acquainted with Mr. Stevens?  A. No, sir.

"Q.  If it should transpire that the defendant is the same Mr. Stevens you heard of—the same man that had the property destroyed—you would have an opinion, as far as that fact appears, that he was at

that time engaged in the violation of the prohibitory-liquor law? A. Yes, sir.''

Defendant challenged this juror for cause, and the court overruled the challenge and permitted the juror to sit and serve upon the trial. Like questions to the jurors F. E. Roy, C. F. Debord and R. Behrens met with similar responses, and each of these jurors was by defendant challenged for cause; each such challenge was overruled by the court, and each juror sat and served upon the trial, over the objection of defendant. The record further shows that defendant, in impaneling the jury, exhausted all his peremptory challenges on others offered as jurors. Did the trial court commit error in overruling the challenges to these jurors for cause?

The defendant was entitled to jurors who had not formed an opinion with reference to whether these places, on account of their having been raided by ''joint smashers,'' were places where intoxicating liquors were being unlawfully kept, sold, or drank, as a beverage, in violation of the act of 1887. So far as the jurors named were concerned, it was only necessary to prove that these were the places that had been broken into by the parties at the time engaged in ''joint smashing.'' That being done, so far as these jurors were concerned, the state had made its case against defendant. He was entitled to be tried by a jury to whom it would have been necessary for the state to prove, by legal and competent evidence, that the places described in the amended information were places where intoxicating liquors were unlawfully kept, sold, or drank, as a beverage, in violation of the law, and that defendant was the owner or keeper thereof. The record clearly discloses that the jurors named, from their answers on their *voir dire*,

The State v. Stevens.

were disqualified to sit and serve upon the trial in the court below.  (*The State v. Miller*, 29 Kan. 43; *The State v. Beatty*, 45 id. 492, 25 Pac. 899; *The State v. Snodgrass*, 52 id. 174, 34 Pac. 750; *The State v. Beuerman*, 59 id. 586, 53 Pac. 874; *The State v. Start*, 60 id. 256, 56 Pac. 15; *The State v. Otto*, 61 id. 58, 58 Pac. 995.)   For error of the court in overruling the challenge of appellant to said jurors for cause, the judgment of the court below will be reversed and the case remanded for a new trial.

JOHNSTON, C. J., SMITH, BURCH, JJ., concurring.

CUNNINGHAM, J. (dissenting) : I dissent from the conclusion reached as indicated in the third division of the syllabus and the corresponding portion of the opinion.

In addition to the questions and answers quoted from the examination of juror Haskins, the record shows the following :

"Ques.  Have you any impression now as to whether or not this defendant, George B. Stevens, was guilty of violating the prohibitory-liquor law?   Ans.  I think I have.

"Q.  That opinion is formed upon the supposition that he is the Stevens that was named in the article you have read (*i. e.*, newspaper article about the smashing of liquors)?   A.  Yes, sir.

"Q.  That is the only ground upon which you base your opinion?   A.  Yes, sir."

Now, at the time the juror was accepted, there was nothing whatever connecting his "impression," derived from newspaper reading, with the defendant. It had not been shown that the defendant was the man whose property had been destroyed.  Admitting that had the juror at this time had this knowledge he would have been disqualified, he did not then have it and hence was a good juror when accepted.  The court

could not presume that this apparently irrelevant matter would come into the case so as to disqualify the juror. The court could not presume that the juror would become possessed of matters outside the case which, added to impressions he then had, would go to make up a disqualifying opinion. It does appear from the record, however, that upon the trial there crept into the evidence proof that the defendant had intoxicating liquors destroyed, of the smashing of which the juror had read. It was then for the first time, if ever, that the juror was rendered or shown to be incompetent. The defendant then, however, was satisfied with the juror. He made no application to discharge the jury, but permitted the trial to proceed. He did not suggest a mistrial. A defendant ought not thus to be permitted to take the chance of an acquittal and, when thrown, be given another hearing.

Beyond this I do not believe, even had it been shown at the time of the impaneling of the jury that the defendant was one whose property had been smashed, that the impression or opinion arising from that was sufficient to disqualify. Such opinion came from the reading of newspaper accounts. It is well characterized by the juror as an impression—such an impression as readers of newspapers get by reading news items, and such only. We have passed the day when only those who cannot or do not read newspapers are eligible to service on juries.

MASON, J. (dissenting): I agree with the views expressed in the last paragraph of the dissenting opinion of Justice Cunningham, and for that reason join in the dissent.

GREENE, J. (dissenting): I concur in the views expressed by Justice Cunningham in the last paragraph of his dissenting opinion.