WILLIAM STEPHENS v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LABETTE.

No. 15,723.   (98 Pac. 790.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Legal Enactment of a Statute—Evidence—Enrolled Bill.* "An enrolled statute imports absolute verity and is conclusive evidence of the passage of the act and of its validity, unless the journals of the legislature show affirmatively, clearly, conclusively and beyond all doubt that the act was not passed regularly and legally, and this rule applies to the title as well as to the body of the act." (*The State v. Andrews,* 64 Kan. 474, 67 Pac. 870.)

2. ———— *Same.* Where the journals of the legislature are self-contradictory, and, reasonably construed together, indicate that the title of a bill was the same when adopted by each branch of the legislature as it appears in the enrolled bill, the

presumption in favor of the accuracy of the enrolled bill is sustained.

3. ——— *Adoption of Report of Conference Committee.* Where a bill originating in°the senate is passed thereby and in due course is amended and passed by the house, and the senate non-concurs in the amendments and the bill goes to a joint conference committee, which agrees upon an amended bill and reports the same to the senate, and the senate adopts the report by an aye and nay vote and by a constitutional majority, the bill is legally passed by the senate in accordance with rule 39 adopted thereby for the session of 1903.

4. ——— *Special Act—Applicability of a General Law.* The amendment adopted at the general election of 1906 to section 17 of article 2 of the constitution of Kansas is not retroactive in effect.

Error from Labette district court; ELMER C. CLARK, judge. Opinion filed December 12, 1908. Reversed.

### STATEMENT.

This case was submitted to the court below upon the following agreed statement of facts:

"It is hereby stipulated and agreed by and between plaintiff and defendant, through their respective counsel, that the above-entitled cause and the respective rights of plaintiff and defendant shall be determined, and judgment entered, upon the following agreed facts:

"The county of Labette has been for years, and now is, a duly and legally organized county of the state of Kansas; that said county during the period of its organization has had, and now has, a duly and legally elected, qualified and acting board of county commissioners; that during the years 1903 and 1904 plaintiff was the duly elected, qualified and acting register of deeds of said county of Labette; that during the year 1903 plaintiff, as such register of deeds, upon demand of defendant, paid into the county treasury of said county of Labette, under protest, the sum of $621.23; that during.the year 1904 plaintiff, as such register of deeds, in like manner paid into said county treasury the sum of $800; that said sums each represent fees duly and legally collected by plaintiff, as such register of deeds, in excess of the salary by law allowed to plaintiff as register of deeds for the respective years 1903 and 1904; that the necessary deputy hire in the office

of the register of deeds of said county of Labette, for the years 1903 and 1904, was equal to, or in excess of, said sums respectively; that the only issue in controversy between the parties to this action, and the only matter for determination by the court in this action, is the validity of chapter 247, Laws of Kansas, 1903, in so far as it affects the salary and deputy hire of the register of deeds of Labette county, Kansas; that if said chapter 247 is valid plaintiff should recover of defendant the sum of $1421.23, and costs; that if said chapter 247 is invalid defendant should recover of plaintiff its costs."

To this agreed statement are appended copies of the journals of the senate and house, etc., which, being lengthy, are here omitted, but are stated, in effect, in the opinion.

*W. D. Atkinson,* for plaintiff in error.

*C. E. Pile,* county attorney, *W. B. Glass,* and *E. L. Burton,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.: As will appear from the agreed statement of facts, the only question presented to the court was the validity of chapter 247 of the Laws of 1903, in so far as it affects the salary and deputy hire of the register of deeds of Labette county.

It is said in one of the briefs that the court based its decision, which is adverse to the register of deeds, on the ground that the act which was passed under the title of Senate Bill No. 479 had not been legally enacted, for the reason that the adoption of the report of the conference committee by the yea and nay vote of a constitutional majority of the senate and of the house did not constitute a final passage of the bill.

In accordance with various decisions of this court it was said in *The State v. Andrews,* 64 Kan. 474, 67 Pac. 870:

"An enrolled statute imports absolute verity and is conclusive evidence of the passage of the act and of its

validity, unless the journals of the legislature show affirmatively, clearly, conclusively and beyond all doubt that the act was not passed regularly and legally, and this rule applies to the title as well as to the body of the act." (Syllabus.)

As the published act, which is by law made evidence of the enrolled bill, appears regular upon its face and applicable to Labette county, the burden of impeaching its applicability thereto rested upon the defendant. Hence we shall consider all the objections to the validity of the act urged by the defendant which are embraced in the evidence offered below, and shall not confine our review to the particular objection upon which it is said the decision of the court was based.

Among the formal requirements prescribed by article 2 of our state constitution are the following:

"SEC. 20. The enacting clause of all laws shall be 'Be it enacted by the legislature of the state of Kansas;' and no law shall be enacted except by bill."

A part of section 16 reads: "No bill shall contain more than one subject, which shall be clearly expressed in its title."

The bill in question was first introduced by Senator Fulton, as Senate Bill No. 479. By its title it related to eleven counties, the county of Labette not being included. (Sen. J. 1903, p. 317.) It was passed by the senate and sent to the house, where, on motion of Mr. King, it was substituted for House Bill No. 696, and the latter bill was stricken from the calender. (House J. 1903, p. 1245.) By regular course of procedure and by unanimous consent the bill was then amended in the house by striking out all after the enacting clause and inserting, in lieu of the portion stricken out, and, as the journal inferentially shows, without any title, a bill consisting of two sections which are in the same words as sections 1 and 2 of chapter 247 of Laws of 1903. (House J. 1903, p. 1436.) Section 1, as in the published bill, relates to the registers of deeds of fourteen counties, including Labette county. Upon the

Stephens v. Labette County.

question, "Shall the bill 'pass?" the roll-call showed: ayes 73, nays 0, absent and not voting 52. (House J. 1903, p. 1437.)

It appears that the bill was declared passed, and the title was agreed to, and the journal recites the title as follows:

"An act providing for the application of the excess fees of the register of deeds in the counties of Clay, Cherokee, Brown, Marshall, Pottawatomie, Wabaunsee, Atchison, Geary, Anderson, Chase and Shawnee." (House J. 1903, p. 1437.)

' This is the exact title of original Senate Bill No. 479, which the house had just before the substitution stricken out, and there is no record of any motion or proceeding relating to a title to the bill. In due course of business thereafter the house returned the bill as amended to the Senate, and it was announced under the exact title, including Labette county, appearing in chapter 247 of the Laws of 1903.

The senate thereafter non-concurred in the amendment and asked for a conference committee, and the house and senate each appointed members of such committee. The conference committee met and agreed on a report, which was made to and adopted by both the senate and the house by a yea and nay vote and by a constitutional majority. In this conference report Senate Bill No. 479, which was under consideration, was referred to by its original title, which had been stricken out by the action of the house. Amendments were, however, recommended in the report to strike out of the title the words "Ottawa, Bourbon, Cowley and Cherokee" (Sen. J. 1903, p. 914), and that the same words be stricken out wherever found in section 1. The senate and house each adopted this report by a yea and nay vote and by a constitutional majority. This was the last step in the enactment of the bill, except the approval thereof by the governor. It was approved under the enrolled title.

Whenever the bill at the various steps of its progress

.was referred to, except when it was sent back from the house to the senate (Sen. J. 1903, p. 783), it was referred to under the original title of Senate Bill No. 479. Now, if that really was the title of the bill when it came to the conference committee, the words "Ottawa, Bourbon and Cowley" were not in the title to be stricken out. In fact none of those words nor the word "Cherokee" was stricken out of the title or body of the act as published in chapter 247 of Laws of 1903. But those words were in the title, if there was a title enacted to correspond with section 1 at the time the bill was amended in the house. Also, it must be said, the title must have been as it appears in the enrolled bill at the time the bill went to the conference committee or the action of that committee and the action of the. house and senate on its report is unintelligible.

It does not seem reasonable to suppose that at the time the house struck out all of Senate Bill No. 479 except the enacting clause it passed a bill without any title, or with the title which had just been stricken out and which if reënacted would have invalidated some of the provisions of the amended bill. It seems more reasonable to suppose that the house at that time adopted a title in consonance with the body of the bill, especially in those matters in which the house was amending the bill, and to suppose that the clerks, in recording the title agreed to, made the mistake of copying the original title instead of the amended title. This supposition is also borne out by the. fact that the house messaged the bill back to the senate under the amended title, and by the action of the conference committee, which evidently had before it a bill with a title which was in consonance with section 1 of the act as published in chapter 247 of the Laws of 1903. At least we can not say that the journals of the legislature show affirmatively, clearly, conclusively and beyond all doubt that this supposed course of procedure, which would have made the act valid as to Labette county,

was not followed. (*The State v. Andrews,* 64 Kan. 474, 67 Pac. 870.) In *The State, ex rel., v. Francis, Treas'r,* 26 Kan. 724, it was said:

"If there is any room to doubt as to what the journals of the legislature show, if they are merely silent or ambiguous, or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid." (Page 731.)

We think the mere absence of any title to the bill as first amended and passed by the house does not conclusively show that no title was enacted. Also it is possible to explain as error the recital of the title as then approved by the house. It was in complete dissonance with the body of the act, and with the evident title to which the conference committee recommended amendments, which amendments were reported to and adopted by the house and the senate. The assumption of error is also strengthened by the fact that the title of the act when approved by the governor was just as should be anticipated from all the circumstances, even without the enrolled bill.

Again, it is contended that the bill was not legally passed by the senate after it had been amended in the house. The bill, as before said, was introduced and first passed in the senate in the manner provided by section 10 of article 2 of the constitution of Kansas. It went to the house, was amended and passed in like manner. Upon the return of the bill the senate nonconcurred in the amendments thereto, but immediately asked for a joint conference committee, and appointed its members of such committee. The house acceded, and appointed its members of the committee. The committee agreed upon a bill substantially like the original bill, except that "Cherokee" was stricken out of the title and body thereof, "Labette" being already therein. It is admitted that the house legally adopted the bill thereafter. It is contended, however, that the senate in adopting the report of the conference committee by a

yea and nay vote and by a constitutional majority did not pass the bill. The argument is too technical. Rule 39 of the senate, which is in accord with usual practice of parliamentary bodies, leaves little room for argument. It reads:

"A vote to concur in house amendments to a senate bill, or a vote to adopt the report of a conference committee, shall be considered the final passage of a bill, and shall be taken by the yeas and nays, and entered on the journal." (Sen. J. 1901, p. 82.)

That the names of the counties which the conference committee agreed should be stricken from the title and body of the bill were not physically stricken out before the bill was submitted to the governor for approval, and before the publication of the law, we do not regard as fatal to the validity of the law as to the other counties. The governor did approve the bill as it related to Labette and other counties whose names were not stricken out by the amended bill reported by the conference committee and adopted by the senate and house. Whether the law is valid as to the other counties is not for our determination in this case.

Finally, it is said the law, if otherwise valid, is special, and that a general law could have been made of uniform application throughout the state, and that the act is repugnant to section 17 of article 2 of the constitution. The enactment of the law being prior to the adoption in 1906 of the amendment to that section, the question whether a general law could have been made applicable rested with the legislature, and the enactment of a special law by the legislature was, by the uniform decisions of this court, a final determination of that question. We are satisfied with the decision in *Anderson v. Cloud County*, 77 Kan. 721, 95 Pac. 583, and that decision by parity of reasoning disposes of this question. The amendment is not retroactive.

The judgment is reversed, and the case is remanded with instructions to render judgment in favor of the plaintiff upon the agreed facts.